IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| RICHARD T. MORRISON and LEDONA MORRISON, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 190060N |
| v. | ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appealed Defendant's Notice of Assessment, dated August 16, 2016, for the

2012 tax year. A trial was held on August 12, 2019, in the courtroom of the Oregon Tax Court.

Ledona Morrison (Ledona[1]) appeared and testified on behalf of Plaintiffs. Silvia Comacho-

Scyoc (Comacho-Scyoc) and Bruce McDonald, tax auditors, appeared on behalf of Defendant.

Comacho-Scyoc testified on behalf of Defendant. Plaintiffs' Exhibits 1 to 18 and Defendant's

Exhibits A to U were received without objection. Plaintiffs' written Closing Argument was filed

August 13, 2019, and Defendant's written Closing Statement was filed August 21, 2019.

## I. STATEMENT OF FACTS

Ledona testified that Richard Morrison (Tony) operates a general contractor business,

DBA Tony Morrison, which works with manufactured homes "from the ground up." He

oversees projects from permitting through the final home. Ledona testified that, in 2012, the

business had three or four employees. Comacho-Scyoc testified that it had three employees.

(*See* Def's Ex O.) Ledona testified that the business had two bank accounts: one, at First Tech,

---

[1] Ordinarily, the court refers to individuals by their last names. However, Plaintiffs share the same last name, Morrison, so the court will use their first names.

into which all business payments were deposited and from which business expenses were paid, and the second at West Coast Bank, used for federal and state employee payroll payments. (Ptfs' Ex 5.) In 2012, $253,696.04 was deposited into Plaintiffs' First Tech account and $230,793.92 was paid out through debits and checks. (Def's Ex F at 1.)

Plaintiffs reported gross receipts for the business of $264,822, which is not at issue. (Def's Exs A at 8, B at 14.) On their original Schedule C, Plaintiffs claimed expenses totaling $243,376. (Def's Ex A at 8.) On their Amended Schedule C, filed after the audit had commenced, Plaintiffs claimed expenses totaling $253,173. (Def's Ex B at 14.) Following the audit, Defendant allowed $177,870 in business expenses. (Def's Ex G at 1.) Defendant's conference officer allowed an additional $1,661 for payroll, bringing the total expenses allowed to $179,530. (*See* Def's Exs E at 3, O at 1.) During trial, Defendant agreed to allow an additional advertising expense of $77.25 and an additional permit expense of $867.

A source of confusion throughout the audit, conference, and Tax Court appeal has been the categorization of expenses. Comacho-Scyoc testified that, after the audit was opened, Plaintiffs provided receipts and bank statements to support the expenses claimed on their original Schedule C. Comacho-Scyoc found that the categories and dates did not match the receipts and other "source documents," so she maintained the expense categories used by Plaintiffs and manually entered expenses into spreadsheets based on those categories. (*See* Def's Ex T at 1, Exs G-S.) She testified that Plaintiffs' source documents revealed a total discrepancy of approximately $50,000 between the source documents and the original return. (*See* Def's Ex T at 1.) Comacho-Scyoc testified that, after she issued her proposed auditor's report, Plaintiffs provided the amended return and handwritten notes concerning the proposed auditor's report. / / /

After receiving Plaintiffs' notes, she reviewed the receipts and bank statements again, allowing some additional expenses.

During trial, the parties identified areas of agreement and focused their testimony on areas of disagreement. The parties agreed to the following expenses: wages (including payroll) of $49,080 (*see* Def's Exs O at 1, U at 1); advertising expenses of $1,810 (including the additional $77.25 allowed during trial) (*see* Ptfs' Ex 8, Def's Ex G at 1); insurance of $4,396 (Def's Exs G at 1, U at 1); cell phone expenses (utilities) of $593.46 (Def's Exs Q, U at 2); permit expenses of $8,210 (Ptfs' Ex 12; Def's Exs G at 1, S at 19, U at 2[2]); materials and supplies[3] totaling $70,676.84 (Def's Exs G at 1, U at 3); recycling of $2,576 (Def's Ex G at 1); meals of $58 (Def's Exs G at 1, U at 3); and contractors[4] of $24,385 (Def's Ex G at 1).

The parties disagree about fuel, equipment, and services. Defendant allowed $7,608.83 in fuel expenses based on "the total of the fuel receipts net of the personal items[.]" (Def Exs G at 1, U at 2.) Plaintiffs claim that $2,274.14 in fuel charges are reflected in their bank statements but were not allowed as expenses.[5] (*See* Ptfs' Ex 13 at 5.) Ledona testified that she removed all of the Stayton fuel debits because they included some personal items, such as coffee, cigarettes, and snacks. She testified that the purchases at Shell Lancaster did not include personal items; Tony was able to pay for gas and service station items separately and he paid for

_____

[2] Defendant allowed $7,343 at audit and agreed to increase that amount by $867 at trial.

[3] Plaintiffs' grouping of expenses resulted in a greater amount of materials and a lesser amount of supplies. (*See* Ptfs' Exs 16, 17.) The parties agreed to accept a combined total of the categories rather than attempt to move individual expenses between the categories.

[4] Ledona initially questioned whether several contractor expenses were omitted from Defendant's total, but Comacho-Scyoc identified each of the expenses in other categories. (*See* Ptfs' Ex 15 at 3, Def's Exs I at 1, F at 2 (Alive T and T, Focus Heating, Doug Walton, and Five Star Homes).

[5] Defendant found that Plaintiffs' bank statements reflected total fuel charges of $8,414.98, though some of that amount was attributable to personal items such as drinks and cigarettes. (*See* Def's Ex U at 2.)

his service station items in cash. Comacho-Scyoc testified that she performed a reconciliation of receipts and bank statements, finding a difference of $806.15. (Def's Ex S at 18.) She assumed the difference was attributable to personal items purchased.

Plaintiffs claim "services" expenses totaling $8,144.62. (Ptfs' Ex 18 at 1.) The list of items identified as services are payments to Pacific NW Engineering and a payment of $323.10 to CAD NW, totaling $1,223.10. (*See id.*) Defendant allowed services expenses of $900 for payments to Pacific NW Engineering. (Def's Exs G at 1, S at 11, U at 3.) Defendant allowed $3,513.40 in payments to CAD NW under the "supplies" category, including one in the amount of $323.10. (*See* Def's Exs S at 12, U at 3.)

Plaintiffs initially claimed an additional $5,512.45 in equipment expenses beyond what Defendant allowed, $4,616.45. (*See* Def's Ex 14 at 1.) Ledona testified that the requested amount was based on payments to United Rentals and Hertz reflected in Plaintiffs' bank statements. (*See* Ptfs' Exs 5, 14.) At trial, the parties discussed whether Plaintiffs properly removed all the deposits paid that were credited back to their account. (*See* Ptfs' Ex 14 at 7-31 (invoices showing deposits and refunds as part of total charges).) Ledona agreed to review that item again and address it in Plaintiffs' written closing arguments. In closing, Plaintiffs wrote that, upon review of the bank statements and invoices, they now think the correct amount should be $4,695.45, with the increase due to an error on one of the United Rentals billing statements. (Ptfs' Closing Argument at 2, citing Ptfs' Ex 14 at 24.)

Plaintiffs' bank statements reflect a debit of $300 to United Rentals on October 27, 2012, whereas the invoice identifies the total as $217.62 with a refund of $4.38, for a deposit of $222. (Ptfs' Exs 5 at 5, 14 at 24.) The invoice separately states the total charged was $300. (*See* Ptfs'

/ / /

Ex 14 at 24.)  On all the other United Rentals invoices, the total charged matches the deposit.
(*See* Ptfs' Ex 14 at 15, 17-21, 27.)

## II.  ANALYSIS

The issue presented is whether, for the 2012 tax year, Plaintiffs may deduct additional trade or business expenses for fuel, services, and equipment beyond what Defendant allowed.

The Oregon legislature intended to "[m]ake the Oregon personal income tax law identical in effect to the provisions of the Internal Revenue Code [IRC] relating to the measurement of taxable income of individuals, * * * modified as necessary by the state's jurisdiction to tax and the revenue needs of the state[.]"  ORS 316.007(1).[6]  In general, terms have "the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required or the term is specifically defined * * *."  ORS 316.012.  On the issue of trade or business expenses, "Oregon law makes no adjustments to the rules under the [IRC] and therefore, federal law governs the analysis."  *See Porter v. Dept. of Rev.*, 20 OTR 30, 31 (2009).

IRC section 162(a) allows a deduction for "all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business."  "To be 'necessary[,]' an expense must be 'appropriate and helpful' to the taxpayer's business. * * * To be 'ordinary[,]' the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved."  *Boyd v. Comm'r*, 83 TCM (CCH) 1253 (2002), 2002 WL 236685 at *2 (US Tax Ct) (internal citations omitted).

/ / /

/ / /

---

[6] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

Deductions are "a matter of legislative grace" and taxpayers bear the burden of proving their entitlement to the deductions claimed. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). Taxpayers must be prepared to produce "any books, papers, records or memoranda bearing upon [any] matter required to be included in the return[.]" ORS 314.425(1); *see also Gapikia v. Comm'r*, 81 TCM (CCH) 1488 (2001), 2001WL 332038 at *2 (US Tax Ct) (requiring taxpayers "to maintain records sufficient to substantiate their claimed deductions"). Generally, if a claimed business expense is deductible, but the taxpayer is unable to substantiate it fully, the court is permitted to make an approximation of the allowable amount, "bearing heavily * * * upon the taxpayer whose inexactitude is of his own making." *Cohan v. Comm'r*, 39 F2d 540, 543-44 (2nd Cir 1930). The estimate must have a reasonable evidentiary basis. *Vanicek v. Comm'r*, 85 TC 731, 743 (1985).

"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief[.]" ORS 305.427. "Preponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). "In an appeal to the Oregon Tax Court from an assessment made under ORS 305.265, the tax court has jurisdiction to determine the correct amount of deficiency, even if the amount so determined is greater or less than the amount of the assessment determined by the Department of Revenue, and even if determined upon grounds other or different from those asserted by the department * * *." ORS 305.575.

/ / /

A. *Fuel*

Plaintiffs ask the court to increase their deduction for fuel expenses by $2,274.14, which they maintain is reflected in their bank statements, but was not allowed by Defendant. Comacho-Scyoc allowed fuel expenses of $7,608.83 based on receipts provided by Plaintiffs, less charges for personal items. She found the difference between the receipts and bank statements was $806.15, presumably due to personal items purchased. In support of their request to increase the amount of fuel expenses allowed, Plaintiffs provided bank statements, but no receipts. The problem with relying solely on bank statement in this case is that debits at gas stations reflect mixed personal and business use purchases. Although the court is permitted to estimate expenses under *Cohan*, the estimate must have a reasonably evidentiary basis. The court finds no basis here to increase Plaintiffs' deduction for fuel expenses.

B. *Services*

It is unclear which expenditures Plaintiffs claim as services beyond what Defendant allowed, either under the services category or under another category such as supplies. Each of the payments identified in Plaintiffs' "services" exhibit – to CAD NW or Pacific NW Engineering – were allowed by Defendant. No further deduction is supported by the evidence.

C. *Equipment*

The court appreciates that Plaintiffs reviewed their records once more following trial and revised their requested amount of equipment expenses based on that review. The court finds that Plaintiffs should be allowed an additional equipment expense of $78 based on the United Rentals invoice dated October 27, 2012.[7]

/ / /

---

[7] That is the difference between the amount charged ($300) and the deposit amount listed ($222).

### III. CONCLUSION

The court finds that, for the 2012 tax year, Plaintiffs are allowed Schedule C business expenses totaling $180,552. That amount is based on the total allowed at conference plus an additional $77.25 for advertising, $867 for permits, and $78 for equipment. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is granted in part. For the 2012 tax year, Plaintiffs' are allowed Schedule C business expenses totaling $180,552.

Dated this ____ day of October 2019.

ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Allison R. Boomer and entered on October 14, 2019.*